UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KIDS' TOWN AT THE FALLS LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF REXBURG, <br><br> Defendant, | Case No. 4:20-cv-00083-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant City of Rexburg's ("the City") Motion for Summary Judgment. Dkt. 24. Plaintiff Kids' Town at the Falls, LLC ("Kids' Town")[1] opposes the Motion. Dkt. 27. Kids' Town also filed objections to certain evidence the City submitted in support of its Motion for Summary Judgment. Dkt. 27-1.

The Court held oral argument on September 2, 2021, and also requested supplemental briefing on a particular issue. The parties dutifully submitted their supplements. Dkts. 33, 34. The Court then took the motion under advisement. Upon review, and for the reasons outlined below, the Court overrules Kids' Town's objections and GRANTS the City's Motion for Summary Judgment.

## II. BACKGROUND

Kids' Town began operating a children's discovery center in Ammon, Idaho, in June

---

[1] Plaintiff is inconsistent on whether an apostrophe is included in its name (i.e. Kids Town vs Kids' Town). Some documents do not contain the apostrophe (*see, e.g.,* Dkt. 1, Dkt. 12); others do (*see, e.g.,* Dkt. 27, Dkt. 33). The Court will utilize the apostrophe.

of 2017. Kids' Town offers education classes (such as art, dance, science, and foreign languages), daycare services, and has an interactive area where children can play and learn. This area features a cityscape scene that includes store fronts, a post office, grocery store, gas station, roadway, farm area, and construction area—among other things. It is this interactive area that is at issue in this case.

On October 28, 2019, Kids' Town obtained a Certificate of Registration for a copyright—Registration No. VAu 1-377-803—covering five unpublished sculptural works: Kids' Town's Logo, Kids' Town's Gas Station & Garage, Kids' Town's Barn, Kids' Town's Grocery, and Kids' Town's Post Office.

 In October 2018, the City opened a children's discovery center in Rexburg, Idaho, called Kidsburg. Similar to Kids' Town's discovery center, Kidsburg is an interactive learning environment. It too features a cityscape: complete with store fronts, a hospital, school, fire station, restaurant, bank, grocery store, and farm. The City has admitted that it visited Kids' Town's discovery center for inspiration when designing Kidsburg.

On February 18, 2020, Kids' Town filed suit against the City. Dkt. 1. In its suit, Kids' Town brings four causes of action.

Kids' Town's first cause of action is for copyright infringement pursuant to 35 U.S.C. § 501. In this claim, Kids' Town alleges the City impermissible copied its barn design and farm-yard wall art. In its response to the City's Motion for Summary Judgment, Kids' Town explained that "[its] interest are adequately and more appropriately protectable under trademark law" and, as a result, it was "withdraw[ing] [its] claims for copyright infringement." Dkt. 27, at 2 n.1. Kids' Town confirmed the same during oral argument on

September 2, 2021. Accordingly, Count One is dismissed.

Count Two revolves around trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a). Kids' Town argues its discovery center has a specific "look and feel," and that the City is infringing on this trade dress and reaping monetary and non-monetary benefits by misappropriating its look and feel.

In Kids' Town third cause of action, it asserts the City has engaged in unfair competition and deceptive trade practices under Idaho law.

Kids' Town's fourth and final cause of action is for common law trademark infringement.[2]

After discovery, the City moved for summary judgment. Dkt. 24. As part of its Motion, the City filed various documents in support. One of those documents was a declaration from its expert, Melissa Paugh. Dkt. 24-3. Paugh specializes in the planning and design of interactive, educational children's exhibitions such as those at issue in this case. *Id*. In its moving papers, the City repeatedly cited Paugh's declaration.

Kids' Town filed an opposition to the City's Motion. Dkt. 27. Simultaneously, Kids' Town filed a document entitled "Plaintiff's Objections to Evidence." Dkt. 27-1. In this document, Kids' Town raises objections to the declaration of Sam Angell (counsel for the City) (Dkt. 24-4), and objects to various paragraphs of Paugh's declaration (Dkt. 24-3).

---

[2] It is unclear whether Plaintiff brought this "common law" trademark claim under federal or state law. In its briefing, Kids' Town references Idaho state law. Dkt. 27, at 16. For its part, however, the City appears to think the claim is federal as it cites to federal cases and statutes in support. Dkt. 24-2, at 18. As will be explained below, there is confusion in general about what this claim is even referring to. Ultimately, it does not matter because the Court will analyze all claims simultaneously. Nevertheless, for consistency, the Court will use the term Kids' Town used in its complaint—"common law trademark infringement."

The City filed a reply to its Motion for Summary Judgment (Dkt. 30) and a response to Kids' Town's Objections (Dkt. 31).

On September 2, 2021, the Court held oral argument on the City's motion and Kids' Town's Objections. At oral argument, the Court also requested supplemental briefing from the parties in relation to a case neither had cited, but which the Court deemed critically important to the resolution of the issues presented. The parties timely filed their supplemental briefs (Dkts. 33, 34), and the matters are now ripe for the Court's review.

## III. LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 322. It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–48 (1986) (emphasis in original). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). In considering a motion for summary judgment, the Court must also "view[] the facts in the non-moving party's favor[.]" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

However, the Court need not accept allegations by the non-moving party if such allegations are not supported by sufficient evidence. *Anderson*, 477 U.S. at 249. Instead, the nonmoving party "must go beyond the pleadings and by its own evidence and 'set forth specific facts showing that there is a genuine issue for trial.'" *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting the nonmoving party must "identify with particularity the evidence that precludes summary judgment"). "If the evidence is colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (cleaned up).

# IV. ANALYSIS

## A. Kids' Town's Objections

At the outset, the Court must address Kids' Town's objections, particularly those in reference to Paugh's declaration as her comments plays a role in the parties' briefs and the Court's decision today.

As mentioned, Kids' Town filed objections to Sam Angell and Melissa Paughs' declarations. Kids' Town objections to Angell's declaration are mostly procedural—that it is not dated, lacks certain signatures, and has exhibits which have not been authenticated. Kids' Town objections to Paugh's declaration are more substantive in nature.

### 1. Legal Standard

Federal Rule of Civil Procedure 56 makes clear that only admissible evidence may be considered in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c)*; see also Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). However, in determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment. *Id.*

While the Court *typically* sees these issues come up via a motion to strike, a specific motion is not required. The advisory committee's notes to the most recent amendments to Rule 56 provide that a Rule 56(c)(2) objection "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form *that is anticipated*. There is no

*need to make a separate motion to strike*." Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendment (emphasis added). Motions to strike are limited to pleadings, which are defined by Federal Rule 7(a); affidavits and exhibits filed in support of, or in opposition to, a motion for summary judgment are not pleadings. *See Albertson v. Fremont County, Idaho*, 834 F. Supp. 2d 1117, 1123 n.3 (D. Idaho 2011). Thus, the Court properly considers Kids' Town's objections to the declarations as just that: objections, not motions to strike.

## 2.  *Discussion*

Kids' Town's procedural objections to Angell's declaration—a missing date, missing signature, and a lack of authentication—are immaterial at this stage. As the advisory committee notes to Rule 56 make clear, the party presenting the evidence either needs to explain why the evidence is admissible at the current juncture or explain the admissible form that is "*anticipated*." As the Ninth Circuit has long held: "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser,* 342 F.3d at 1036–37 (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.")). Thus, the Court will not exclude Angell's declaration as requested because the information can be presented in an admissible form at trial. Importantly, the City has already remedied many of Kids' Town's concerns with its refiled declaration (Dkt. 31-1) which renders those specific objections moot. *See Rafferty v. Keypoint Government Solutions, Inc*., 2020 WL 7038952 (D. Idaho 2020). Any remaining objections (such as

foundation and authentication) can be dealt with at trial.

The Court next turns to Kids' Town's substantive objections to Paugh's declaration. Kids' Town objects in general to Paugh's declaration because it is not dated, but also because it is too general and only provides a "10,000 foot view" of the issues. Dkt. 27-1, at 3.

The City has since remedied the date issue rendering that objection moot. And while Kids' Town may feel that Paugh's declaration is too broad, such an objection goes to the weight of her testimony, not its admissibility. Importantly, Kids' Town has cast a rather wide net in this trade dress infringement lawsuit alleging infringement of the overall "look and feel" of its discovery center. An expert's opinion would, therefore, naturally include statements of broad inclusion.

Kids' Town also claims that considering certain portions of Paugh's opinion at this stage would impermissibly invade the jury's purview. Not so. The Court can, and should, consider expert opinions at summary judgment to aid in its determination of whether any material facts are in dispute.[3]

As Courts in this District have reiterated numerous times, it is proper to "consider expert opinion testimony in ruling on a summary judgment motion so long as it contains facts that would be admissible at trial and the opinion is based on the expert's personal knowledge." *Est. of Kane v. Epley's Inc.*, 2016 WL 7155734, at *2 (D. Idaho Dec. 5, 2016). *Accord, Asarco, LLC v. Union Pac. R.R. Co.*, 2017 WL 639628, at *3 (D. Idaho Feb. 16,

---

[3] Ironically, Kids' Town itself cites to Paugh's declaration numerous times in its response to the City's Motion asserting her opinions work in its favor. *See, e.g.,* Dkt. 27, at 6, 8–9, 12.

2017); *Blankenship v. McDevitt*, 2016 WL 5660401, at *5 (D. Idaho Sept. 29, 2016), aff'd, 724 F. App'x 594 (9th Cir. 2018). In considering expert testimony, the Court has a "gatekeeping responsibility" to objectively screen such testimony to ensure that it "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999).

Here, the Court has reviewed Paugh's declaration and curriculum vitae and finds she is qualified to opine on the current matters. What's more, Kids' Town has not put forth any contrary expert opinion or declaration calling into question Paugh's credentials or her conclusions. All it provided in rebuttal was attorney argument. Such is insufficient to support exclusion of Paugh's opinions. *See Columbia Pictures Industries, Inc. v. Fung*, 2009 WL 6355911 (C.D. Cal. 2009) (accepting expert opinion proffered by moving party in summary judgment proceeding when it was unrebutted by non-moving party).

Finally, Kids' Town specifically objects to paragraphs 10, 17, 19, 20, and 21 of Paugh's declaration. The objections are largely factual in nature and not worth dissecting further. Were this case to proceed to trial, Kids' Town would have every opportunity to cross-examine Paugh and her opinions. Such will not be possible in this matter as the Court will be granting summary judgment in its decision today; nevertheless, Kids' Town had every opportunity to depose Paugh or to retain an expert of its own to rebut Paugh's opinions, but chose not to do either. Thus, Paugh's opinions are uncontested by Kids' Town own choosing.

In short, the Court has reviewed Paugh's declaration and finds it is relevant, reliable and may be considered at this stage. Accordingly, Kids' Town's objections are

OVERRULED.

### B.  Motion for Summary Judgment

As noted, Kids' Town has abandoned its copyright claim (Count I). Having done so, only Count II (a federal claim for trademark and/or trade dress infringement)[4]; Count III (a state common law claim for unfair competition); and Count IV (a common law claim for trademark infringement) remain.

Organizationally, the Court must address two matters at the outset.

First, as the Court has previously found, "the analysis for a claim of trademark infringement and for unfair competition are identical." *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 331 F. Supp. 3d 1131, 1144 (D. Idaho 2018) (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047, n. 8 (9th Cir. 1999) (reviewing trademark infringement and unfair competition claims under the same governing standard and noting that the claims can be analyzed jointly)). Thus, the Court will only analyze Kids' Town's federal trade dress claim.

Second, by all accounts, the City operated under the assumption that Count II (federal trademark/trade dress claim) and Count IV (common law trademark claim) addressed the same substantive issues; to wit, the "overall look and feel" of Kids' Town's discovery center. Now, in its response to summary judgment, Kids' Town alleges that it has a protectible trademark right in its logo and that the City infringed upon that mark. Dkt. 27, at 16. The City responds by noting that Kids' Town never pleaded a cause of action for

---

[4] Furthermore, while Kids' Town has styled this claim as "trademark / trade dress," it is clear the claim is just for trade dress infringement. Accordingly, the Court will utilize solely that reference.

trademark infringement of its logo and that arguing so now goes beyond its pleadings and prejudices the City. Under the circumstances, the Court must agree.

In its Complaint, Kids' Town logo is mentioned a mere three times. The first two references come as part of Kids' Town explanation of its discovery center under the heading "Kids Town's Discovery Center Trade Dress." Dkt. 1, at 4. In paragraph 16 of that section, Kids' Town simply describes its logo. *Id.* at 7. Shortly thereafter, under a section entitled "Defendant's Misappropriation and Infringement of Kids Town's Trade Dress and Copyrights" Kids' Town mentions that after it sent the City a cease-and-desist letter, the City "changed its logo." *Id.* at 10.[5] Thereafter, the logo is not mentioned.

The Court has explained (and reiterated numerous times) that the principle of incorporation within a complaint means that when a particular fact is omitted from a claim—but was referenced previously—the Court need not dismiss that subsequent claim under Federal Rule of Civil Procedure 12(b)(6) because the relevant fact was included and incorporated. *See Sagastume v. RG Transportation, Inc.*, 2019 WL 2218986, at *8 (D. Idaho May 21, 2019) (finding that even though plaintiff had omitted a particular fact in a claim section of his complaint, because he had previously stated the fact and incorporated all facts in the relevant claim section, the omission did not warrant dismissal). *Accord, Lafky Properties, LLC v. Glob. Credit Union*, 2020 WL 4736296, at *3 (D. Idaho Aug. 14, 2020); *Dreyer v. Idaho Dep't of Health & Welfare*, 455 F. Supp. 3d 938, 949 n.7 (D. Idaho 2020); *Dana v. Tewalt*, 2020 WL 1545786, at *20 n.20 (D. Idaho Apr. 1, 2020).

---

[5] Frankly, this reference could be interpreted as implying the logo issue (if there was one in the first place) was resolved because the City "changed its logo." Dkt. 1, at 10.

The present situation, however, is not quite as simple. Yes, Kids' Town incorporated all preceding paragraphs in each of its asserted claims; however, it never actually discussed the logo—in any preceding paragraphs or the claim itself. Importantly, all of Kids' Town's claims center around the distinctive "look and feel" of its discovery center. And, in specifically looking at Count IV, there is no indication that Kids' Town is pursuing a claim for infringement of its logo. Kids' Town's language there clearly outlines that claim IV is for the "look and feel" of the discovery center. Dkt. 1, at 16–17. There is a confusing and passing reference to Kids' Town's website, but no mention whatsoever of its logo. *Id*. at 16. Simply put, there is nothing within Count IV (or any Count for that matter) that would alert the City to the fact that Kids' Town would be arguing infringement of its logo. The Court, therefore, dismisses this argument.

In sum, the Court's inquiry as it relates to Claims II, III, and IV, begins and ends with Kids' Town's trade dress claim and its assertion that the City has infringed the overall "look and feel" of its discovery center.

"Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001) (cleaned up). To sustain a claim for trade dress infringement, a plaintiff must prove three elements: "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product . . . creates a likelihood of consumer

confusion." *Id.* at 1258. Importantly, this is an inclusive "and" test. That is to say, a plaintiff must prove *all three* elements to succeed.

Trade dress has commonly been described as falling into one of two main categories: product design or product packaging. Product design, as the name suggests, *typically* relates to the protected nature and design of an actual, physical product. Product packaging also relates to a physical product, but *typically* is not the product itself, but rather the "dressing" or manner in which the product is presented to the public. This is a confusing distinction to be sure.

An example of a product design trade dress would be a three-dimensional product that is purchased by a customer. A product packaging trade dress could be the labels, packaging, or design of that same purchased product. For example, if a person purchased a red toy car for their child, the toy car would fall under the product design umbrella, while the box the car came in would fall into the product packaging category. However, the distinction is, often, less than clear. As the United States Supreme Court has summarized, trade dress is "a category that originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded by many Courts of Appeals to encompass the design of a product" itself. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). The Supreme Court went on to give an example of why this principle is so confusing:

> [A] classic glass Coca–Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from

the former.

*Id*. at 215.

Whether Kids' Town's claim is couched as a product design or product packaging trade dress is important particularly as it relates to the second prong of the *Clicks Billiard* test (distinctiveness or secondary meaning) which the Court must employ today.

If Kids' Town's trade dress is considered product packaging, it may prove distinctiveness either by showing that it is "inherently distinctive," in that its "intrinsic nature serves to identify a particular source of a product," *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992), or that it has sufficiently "acquired" distinctiveness—conventionally referred to as "secondary meaning,"—such that, "in the minds of the public," the primary significance of the trade dress "is to identify the product's source rather than the product itself." *Samara Bros.,* 529 U.S. at 210–11.

By contrast, trade dress based on product design or configuration never is "inherently distinctive," since "product design almost invariably serves purposes other than source identification." *Id*. at 213. Therefore, in order to gain the protection of product design trade dress under Lanham Act § 43(a), a plaintiff must demonstrate that its trade dress has "acquired" distinctiveness in the form of "secondary meaning." *Id.* at 212–13. In other words, a product packaging claim can show it is "inherently distinctive" or has "acquired distinctiveness" (i.e. secondary meaning), whereas a product design claim is protectable *only* upon a showing that it has acquired distinctiveness via secondary meaning.

Kids' Town argues that this is a product packaging case because it is not selling the discovery center itself to each customer, but rather the experience "packaged" within the

discovery center.[6] The City finds this conclusion preposterous, contending that customers visit Kids' Town to be immersed in the experience and that it is the design of the product—not just some décor or packaging—that Kids' Town is trying to protect here. The Court agrees with the City.

Kids Town's entire case is premised on the "look and feel" of its center, not simply the labels, packaging, colors, or décor therein. Many of the claimed trade dress products are structures—a model fire station, a car track, or farmhouse (and their spatial relations one with another)—not just the colors and shapes behind them on the walls of the building.[7] This lends itself to a finding that Kids' Town seeks to protect the design of its product, not just the packaging.

That said, even if the Court were to entertain Kids' Town's position, the Supreme Court has cautioned that in these frustrating circumstances of trying to distinguish between product design and product packaging, "courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Samara Bros.,* 529 U.S. at 215. That is what the Court will do in this case today: review whether Kids' Town's trade dress has acquired secondary meaning. However, to afford Kids' Town

---

[6] In its supplemental brief, Kids' Town confusingly states that children "do not *play* with the exhibits . . . [r]ather, Kids' Town provides entertainment services for children by offering an indoor recreational and play facility." Dkt. 33, at 3–4 (emphasis added). The Court struggles to see how kids do not "play" with the exhibits at a "play facility."

[7] Lauren Tatton (designer and owner of Kids' Town) explained that she made specific design choices when designing her discovery center—including the placement of certain features within the cityscape and other three-dimensional objects such as toys, cars, and carts—and that it is "all of these features and the layout [] that gives Kids' Town its inherently distinctive look." Dkt. 27, at 8. In short, it is clear Kids' Town wishes to protect more than just décor.

MEMORANDUM DECISION AND ORDER - 15

(as the non-moving party) every available benefit, the Court will also independently review whether Kids' Town's trade dress is inherently distinctive.

With that, the Court turns to the first factor under *Clicks Billiards* and asks whether Kids' Town has shown that its trade dress is non-functional.

### 1. Functionality

A product feature is functional and may not serve as a trademark if the feature is "essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Clicks Billiards*, 251 F.3d at 1258 (*citing Qualitex Co. v. Jacobson Prods. Co., Inc.,* 514 U.S. 159, 165(1995)); *accord TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23 (2001). The party asserting trade dress protection bears the burden of proving that the matter sought to be protected is not functional. *TrafFix Devices,* 532 U.S. at 29. The distinction between functional and non-functional is almost as confusing as the distinction between product packaging and product design. What's more, even if individual elements of the asserted trade dress may be functional, such does not necessarily mean the trade dress as a whole is not functional. *Talking Rain Beverage Co., Inc. v. South Beach Beverage Co.,* 349 F.3d 601, 603 (9th Cir. 2003).

The nonfunctionality requirement of trade dress protection "is based on the judicial theory that there exists a fundamental right to compete through imitation of a competitor's product, which right can only be temporarily denied by the patent or copyright laws." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002) (cleaned up). The functionality doctrine is meant to promote free competition by ensuring that *patent law*

remains the only legal source of exclusive rights in utilitarian features. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995). If a product's functional features could be trademarked, the holder could obtain a monopoly "over such features . . . without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity)." *Id.* at 164–65 (cleaned up).

The trademark statutes do not define functionality. The Supreme Court's traditional test of functionality is that "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10 (1982). In *TrafFix Devices,* the Supreme Court further split functionality into two types, each with its own legal test. 532 U.S. at 32–33. The two types are "utilitarian functionality," which is based on how well the product works, and "aesthetic functionality," which is based on how good the product looks. *See also Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006). If the claimed trade dress has either type of functionality, it is unprotectable. *Id.* at 1072.

The Ninth Circuit has tried to simplify the overall concept of functionality by explaining that "[f]unctional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.,* 158 F.3d 1002, 1006 (9th Cir. 1998) (cleaned up).

To aid courts in the above determination of functionality, the Ninth Circuit typically considers four factors: "(1) whether the design yields a utilitarian advantage, (2) whether

alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 866 (9th Cir. 2020) (citing *Disc Golf*).

Oddly, the parties in this case did not originally address any of the *Disc Golf* factors. Instead, Kids' Town broadly focused on the overall "look and feel" of its discovery center to support its conclusion that its trade dress is nonfunctional, and the City focused on whether Kids' Town's trade dress serves as a source identifier for its conclusion that Kids' Town trade dress *is* functional. Because it is clear *Disc Golf* is utilized in the Ninth Circuit as the test for functionality,[8] the Court requested supplemental briefing on the issue.

Because *Disc Golf* is the operative test for functionality, the Court begins its discussion there. It will then address the parties' original arguments, because, while neither falls directly under any *Disc Golf* factor, each addresses functionality and must be analyzed.

a. *Disc Golf* Factors

The aforementioned test, as first enumerated by the Ninth Circuit in *Disc Golf* in 1998 and utilized to the present day, asks the following when seeking to determine whether the asserted trade dress is functional:

---

[8] *See Moldex-Metric, Inc. v. McKeon Prod., Inc.*, 891 F.3d 878, 880 (9th Cir. 2018); *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1128 (9th Cir. 2016); *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 685 (9th Cir. 2012), *abrogated by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *Globefill Inc. v. Elements Spirits, Inc.*, 473 F. App'x 685, 686 (9th Cir. 2012); *Atlas Equip. Co. LLC v. Weir Mins. Australia Ltd.*, No. 09-36151, 2011 WL 52455, at *1 (9th Cir. Jan. 6, 2011); *Talking Rain*, 349 F.3d at 603; *Clicks Billiards*, 251 F.3d at 1260. There are also over 100 other reported district court cases from within the Ninth Circuit—including Idaho—that utilize this test for functionality.

(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.

*Blumenthal Distrib.*, 963 F.3d at 865 (citing *Disc Golf*). The Court will address each element in turn.[9]

### (i)     *Utilitarian Advantage*

Federal courts in this circuit analyzing the first *Disc Golf* factor have found that trade dress features have utilitarian advantages when those features "constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1012 (9th Cir. 1999) (cleaned up).

Thus, the more a product's design makes an item useful to the consumer, the more it suggests functionality. *Talking Rain,* 349 F.3d at 604. In this case, Kids' Town has alleged that it is the entire "look and feel" of its discovery center that attracts patrons and that this is what is wishes to protect. The design of various features within the discovery center is, therefore, something the Court should consider.

The entire premise of Kids' Town's lawsuit is that its discovery center has a specific "look and feel" that is protectable. This particular phrase—"look and feel"—appears 17 times in Kids' Town's Complaint and 12 times in its briefing on the current motion. Kids' Town explains in its briefing that it "is not seeking to trade dress the recited features in the

---

[9] Again, there is some overlap in the Court's discussions as it relates to the actual *Disc Golf* factors and the parties' original arguments in support of functionality. For organizational purposes, the Court discusses the two separately, however, they delve into the same subject matter and work in tandem in support of the Court's finding today.

abstract so as to exclude competitors from using the general features. Seeking such broad protection *would likely* render Kids' Town's trade dress as functional. Rather, Kids' Town is seeking to protect the combination of all these features taken together." Dkt. 27, at 5 (emphasis in original). While this statement is slightly confusing and, as will be discussed later, appears to defeat Kids' Town's own argument, it is clear Kids' Town seeks to protect the overall "look and feel" of its discovery center as opposed to any of its individual parts.[10]

At Kids' Town's discovery center, the design (the look and feel) of the cityscape (the store, gas station, fire dept, etc.) as well as the interactive play areas, are the purported reason patrons choose to come. Accordingly, by design, these elements affect the quality of the experience and, thus, yield a utilitarian advantage.

This begs an important question: would the product still be the same without these specific features? Clearly the answer is no, as it is precisely the combination of these specific features Kids' Town seeks to protect. Every element of Kids' Town's discovery center (individually and collective) fulfills its intended function based, as least to some degree, upon its aesthetic appearance.[11] Such a utilitarian advantage suggests functionality and renders Kids' Town trade dress unprotectable.

---

[10] Even then, Kids' Town stated at the hearing that it was actually only seeking to protect a "portion" of Kids' Town—the "small child's area"—and then reiterated in its supplemental briefing that its trade dress is the "overall look and feel of the *front half* of its children's center." Dkt. 33, at 2 (emphasis added). The Court is concerned that Kids' Town is moving the goalposts in this case. By all accounts, it was originally seeking protection of the overall look and feel of the entire discovery center. Then, it appears to have refocused during discovery and clarified it was seeking to protect certain features but not others (the "front half"). Now, it appears Kids' Town is focused solely on protecting a portion of the discovery center—the small child's area. It likely goes without saying, but on a fundamental level, it is confusing to seek protection of the "overall look and feel" of a particular design, but then only seek protection of part of that overall design.

[11] Not to belabor the point, but Kids' Town's argument here is confusing as well. Although this entire lawsuit is about the "overall look and feel" of its discovery center, Kids' Town claims that its asserted trade

### (ii)    Alternative Designs

Under the second *Disc Golf* factor, a lack of alternative designs favors a finding of functionality. It seems clear there would be alternative designs available for the collective features in Kids' Town's discovery center. As Kids' Town repeatedly points out, almost by definition, the existence of alternative designs suggests that design choices are simply aesthetic (and nonfunctional) as opposed to functional.[12] That said, "the existence of alternative designs cannot negate a trademark's functionality." *Talking Rain,* 349 F.3d at 603. Thus, while there are alternative designs available, this fact—standing alone—does not defeat functionality.

### (iii)   Whether Advertising Touts the Utilitarian Advantages

Kids' Town has not addressed advertising head-on, although it explained in its Complaint that it "markets its services online, over the radio, and over television" and that through these promotional efforts it has "developed and maintained clients through the United States, including in Idaho, Utah, and Wyoming." Dkt. 1, at 13. Additionally, Kids'

---

dress has *no* utilitarian advantage "aside from providing a unique look." Dkt. 33, at 5. But that is precisely the point. Kids' Town seeks to protect the "unique look," i.e. the "aesthetic appearance" of its product. Having a specific look for a children's discovery center is a utilitarian advantage. What's more, while Kids' Town tries to tie in arguments about the public's perception of the quality of its discovery center, it has not presented any examples where the public was seeking verification that "the particular entity (Kids' Town) made, sponsored, or endorsed [the] product." *Leatherman Tool Grp,* 199 F.3d at 1012.

[12] The Court's prior comments on moving the goalpost apply here as well. Yes, there are alternative designs available to those interested in opening a children's discovery center. Neither party, nor the Court, disputes that. But some degree of overlap is unavoidable. Thus, would Kids' Town have still brought this suit if only one element at Kidsburg was similar to one element at Kids' Town? The Court does not know, and counsel would not directly answer that question at oral argument, but the fact remains that although Kids' Town reiterates frequently that there are so many design choices available its design cannot be functional, it chose to sue the City because one of those alternative designs happened to overlap "too much" with its own design.

Town claims that "through its widespread and favorable acceptance and recognition by the consuming public, the 'look and feel' of Kids Town's discovery center has become an asset of substantial value as a symbol of Kids Town's discovery center, its high quality services, and its goodwill." *Id.* at 14. Kids' Town reiterated the same in its supplemental briefing, stating its "unique overall look and feel . . . garnered Kids' Town a positive reputation in the community." Dkt. 33, at 7.

In addition to these references, the City also pointed the Court to an East Idaho News article (and video) published just prior to the opening of its discovery center in which Kids' Town explained its center and emphasized that its exhibits were designed to be appealing to children and interactive. Dkt. 34-1.

Accordingly, because Kids' Town actively seeks customers through advertising based upon specific features, i.e. the unique and appealing overall look and feel of its discovery center, this factor weighs in favor of functionality.

### (iv)    *Manufacturing*

This element typically focuses on cost-cutting or simplified manufacturing and looks at whether those factors increase (or decrease) functionality. This element does not seem particularly relevant given the facts of this case. It is, therefore, a non-factor.

### (v)    *Collective Conclusion*

As mentioned above, the functionality elements must be weighed collectively. *Talking Rain Beverage Co.*, 349 F.3d at 603. Doing so in this case, the Court finds that no reasonable juror could conclude that the trade dress claim for Kids' Town's overall "look and feel" is non-functional. Manufacturing is a non-issue, and despite the fact that there

MEMORANDUM DECISION AND ORDER - 22

are alternative designs available, Kids' Town's overall look and feel has utilitarian advantages because children playing at Kids' Town physically interacts with the product; it is not something that is passively viewed. The purpose of the discovery center is to allow children to touch, move, and interact with the design features. The features, individually and collectively, are an integral part of the child's experience and provide the actual benefit of the trade dress. This is the precise definition of having a utilitarian advantage. What's more, it is these advantages Kids' Town actively uses in advertising to solicit customers.

Thus, the Court finds that under *Disc Golf,* Kid's Town's trade dress is functional.

As mentioned, while *Disc Golf* is the applicable standard the Court must use in this case, in the interest of fairness, the Court will briefly address the original arguments raised by the parties—in briefing, and at the hearing.

b. Overall look and feel

Kids' Town focused its original arguments on the idea that its trade dress was not functional because it was seeking to protect the overall "look and feel" of its center as opposed to any individualized parts. Now, it is Kids' Town's prerogative to define its claimed trade dress as the "overall appearance" of its product if it desires. In principle, such claims are subject to the test for utilitarian and aesthetic functionality, just like any other claimed trade dresses. That said, "when the claimed trade dress is an overall appearance, these tests must be applied with extra care to prevent semantic trickery from obscuring the functionality of the design the plaintiff seeks to monopolize." *Blumenthal Distrib.*, 963 F.3d at 866 (cleaned up).

The Ninth Circuit has consistently held that, as a matter of law, a product's "overall

appearance" is functional, and thus unprotectable, where the product is "nothing other than the assemblage of functional parts," and "even [if] the arrangement and combination" of those parts is designed to make the product more functional. *See Leatherman Tool Grp.*, 199 F.3d at 1012–13 & n.6. S*ee also Tie Tech, Inc.*, 296 F.3d at 786; *Secalt*, 668 F.3d at 687.

For example, in *Clicks Billiards*, the Ninth Circuit held that a pool hall's restaurant's asserted trade dress in its total visual appearance, "examined as a whole," was nonfunctional, noting that protecting that trade dress would leave a multitude of alternatives to the pool hall industry. *Clicks Billiards*, 251 F.3d at 1258–62; *see also, e.g.*, *Millennium*, 817 F.3d at 1130–31 (evaluating the functionality of a graphical format of presenting data by looking to the "overall visual impression that the combination and arrangement" of its elements creates (quoting *Clicks Billiards*, 251 F.3d at 1259)).

Kids' Town argues that, as was the situation in *Clicks Billiards*, because a prospective designer of a children's learning centers would have an "unlimited number of design choices," Dkt. 27, at 6, its trade dress is inherently nonfunctional. The problem with this assertion is it is somewhat circular in nature. Arguably, the City has utilized one of those "unlimited number of design choices" in the design of Kidsburg. That certain portions of its design overlap with Kids' Town is not difficult to imagine. This concept is important in the Court's distinctiveness analysis below, but is also relevant here.

While Kids' Town claims that the exclusivity of its "look and feel" will not put the City at a disadvantage, such is simply not true. If the Court were to uphold Kids' Town's trade dress for the overall look and feel of its center as nonfunctional, it would limit what

the City—or any other designer—could do because its design *might* incorporate one or more elements that Kids' Town incorporated in its center (again, despite Kids' Town's contention that it is not seeking to protect any individual element).[13] This would be fundamentally unfair and runs afoul of the Supreme Court's holding that patent law is the only legal source of exclusive rights in utilitarian features, otherwise free competition is hampered. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995).

The Court has an additional problem with Kids' Town's reliance on cases such as *Clicks Billiards*. In those cases, the "overall look and feel" at issue was not the product the customer actually came to purchase. As the City correctly points out, customers go to billiard halls to play billiards or visit restaurants to purchase food, but they do not actually engage with the "overall look and feel" (i.e. the décor) of the establishment. To be sure, customers may choose to patronize a particular venue because they prefer the style, or the décor is more to their liking, but they do not actually *engage* with that décor. For example, the trade dress at issue in *Clicks Billiards* was not the actual billiards tables people came to use, but the décor of the pool hall restaurant.

The present case differs from *Clicks Billiards* (and similar such cases) because Kids' Town's décor and design (its "overall look and feel") cannot be divorced from the experience itself. And while Kids' Town may dispute whether people come to its venue for the experience alone—absent any considerations for its decorations—or because of the

---

[13] This is the first example of why Kids' Town "explanation" of what it seeks to protect—cited above from Dkt. 27, at 6—is more confusing and illuminating. It is somewhat convoluted to say that while individual parts can't be protected, the overall combination of those parts can, but then say that even if another business's overall combination is different, it infringes on your combination if it has similar individual parts.

design, it cannot explain away the distinction because in this case there is none. Kids' town has alleged that it *is* the overall "look and feel" it wants protected in this case because it is that overall look and feel that attracts people to its discovery center. Inherent in this assertion is the notion that were the overall "look and feel" to be different and/or change, Kids' Town would lose business. Thus, Kids' Town attributes its success, at least in part, to the design of its product.

In short, the cases concerning the overall look and feel of an establishment, while helpful, are not directly on point because Kids' Town is not seeking to simply protect the décor (or packaging) of its center, but the design pieces that make up the experience itself.[14] This lends itself to a finding of functionality. *Disc Golf,* 158 F.3d at 1006 ("[f]unctional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product."). These design pieces which make up the special experience Kids' Town is pushing are functional because they affect the "quality" of the product itself. *Inwood Labs*, 456 U.S. 850 n.10.

Kids' Town argument here is not precisely on point and does not persuade the Court that its trade dress is nonfunctional. To the contrary, against the backdrop of the cases cited above, the Court concludes, as it did above under *Disc Golf*, that Kids' Town's trade dress

---

[14] In like manner, however, cases dealing with specific and technical product design features are also not directly on point. As the Supreme Court noted in *Inwood Labs.,* a product feature is functional "if it is essential to the use or purpose of the article." 456 U.S. at 850 n. 10. It seems apparent that, for example, the height or color of Kids' Town's grocery store is not essential to its use or purpose. But again, as Kids' Town makes clear, it is not seeking trade dress protection over any particular element, but the overall "look at feel" of how those elements work together. This assertion renders cases regarding specific product configuration and design unhelpful as well.

is functional.

c. <u>Source Identifier</u>

In support of its original argument, the City claimed Kids' Town's alleged trade dress does not serve the function of identifying Kids' Town as the source of the product and, therefore, is not even protectable. While source identification is not strictly part of an ordinary functionality test,[15] when a trade dress serves as a source identifier, such can be considered non-functional. *Sega Enterprises Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1531 (9th Cir. 1992), as amended (Jan. 6, 1993) (finding that if "the product feature serves no purpose other than identification," it can be considered nonfunctional) (cleaned up). The opposite, however, it not necessarily true. A product could be found to be nonfunctional regardless of whether or not it can be classed as a "source identifier." In other words, the City is incorrect in claiming that Kids' Town trade dress is nonfunctional—and not even protectable—*unless* it serves as a source identifier.

Kids' Town does not address the City's argument about source identification in its briefing. Nor did it at oral argument. In its Complaint, however, Kids' Town does claim that "customers ha[ve] come to associate the distinctive 'look and feel' of Kids' Town's discovery center with Kids' Town's services." Dkt. 1, at 13. Be that as it may, there is

---

[15] The way the City framed this argument is somewhat similar to the first *Disc Golf* factor, as explained in detail in *Leatherman Tool Grp.,* which seeks to determine whether the asserted features "constitute the actual benefit that the consumer wishes to purchase, as distinguished from *an assurance that a particular entity made, sponsored, or endorsed a product*." 199 F.3d 1009 at 1012 (emphases added). This argument is also related to Kids' Town's allegations that its trade dress is product packaging and thus, "inherently distinctive." In order to be inherently distinctive, Kids' Town would have to prove the "intrinsic nature serves *to identify a particular source* of a product." *Two Pesos,* 505 U.S. at 768 (emphasis added). In theory, the City could have been responded to this general assertion—which would fall more under *Clicks Billiards* second element as opposed to the first. Regardless, the Court reviews the substance of the argument here.

nothing within Kids' Town's trade dress that would allow "customers [] to identify the source of the good" in and of itself. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006). Maybe a particular barn design, color scheme, or combination of certain elements would *remind* a customer of Kids' Town's discovery center, but because Kids' Town seeks to protect the entire overall look and feel of its center[16]—which includes dozens of common design features—it is difficult to imagine this could be considered a source identifier in the same way a particular package or specific design feature normally would.

Approaching this topic from the inverse perspective is also helpful. Does the alleged trade dress serve some *other* function apart from source identification? While the Court has already answered the source identification question in the negative, the answer to the inverse inquire is yes—which cuts against a finding of source identification as well. The overall look and feel of Kids' Town's discovery center serves the purpose of engaging, and retaining clients. As Kids' Town admits, the overall "look and feel" of its discovery center has "become an asset of substantial value of a symbol of Kids' Town's discovery center, its high quality services, and its goodwill." Dkt. 1, at 14. Thus, Kids' Town's "look and feel" serves a variety of roles (primarily commercial purposes) that are not related to any source identifying purposes.[17]

---

[16] Or even of a portion of its center as it now appears to be asserting.

[17] To be fair, an argument *could* be made that if a commercial benefit comes from the trade dress then the trade dress is, in fact, a source identifier because people *recognize* the product, or the quality of the service, and act on it by frequenting the business. That said, neither party makes that argument and the example itself does not squarely fit within the traditional definition of source identifier.

In sum, the Court agrees with the City that Kids' Town's trade dress does not serve any source identifying purposes. This also means that because its trade dress serves purposes other than identification, it cannot be considered nonfunctional. Again, however, the Court disagrees that *solely* because Kids' Town's trade dress does not serve as a source identifier, it is also functional. Its trade dress is functional for all the reasons explained above, irrespective of a finding as to source identification.

Thus, under *Disc Golf*—and the party's arguments as originally presented—the Court finds Kids' Town's trade dress is functional as a matter of law.

d. Conclusion

A product feature is functional and may not serve as a trademark if the feature is "essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Clicks Billiards*, 251 F.3d at 1258 (cleaned up).

Utilizing the *Disc Golf* factors, the Court has determined Kids' Town's overall "look and feel" is functional. What's more, it is clear that the "use or purpose" of the alleged trade dress affects the quality of Kids' Town's discovery center. If it did not, this lawsuit would not have materialized. As the Ninth Circuit has reiterated: when the "aesthetically pleasing nature of the designs constitutes part of the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product[]," the dress is functional. *Scentsy, Inc. v. Harmony Brands, LLC*, 585 F. App'x 621, 622 (9th Cir. 2014) (cleaned up).

Additionally, allowing Kids' Town to have exclusive use of the cityscape (and other

features) would put the City at a disadvantage because it would, in essence, not be able to have a center at all because its "look and feel" overlaps with Kids' Town's overall "look and feel." Now, Kids' Town's response to this argument is, again, that "competitors remain free to employ many different combinations and designs to compete with Kids' Town." Dkt. 33, at 7. Such an assertion, however, belies the premise of this entire case and begs the question: how? If there are endless design options, how does Kidsburg infringe on Kids' Town discovery center. What if there were more, or less, similarities? What degree of overlap is allowed among the "different combinations" of designs? Again, Kids' Town has not been able to provide a sound answer to this question. But the fact remains, Kids' Town cannot claim that there are unlimited designs when trying to support its argument that this is a product packaging case and that its trade dress is nonfunctional, while simultaneously claiming that it is the specific design in this case that it must protect and any similarities at Kidsburg are indicative of infringement.

Ultimately, the Court finds Kids' Town's trade dress is functional. Accordingly, it need not address secondary meaning or likelihood of consumer confusion. *Scentsy, Inc. v. B.R. Chase, LLC.*, 942 F. Supp. 2d 1045, 1058 (D. Idaho 2013), aff'd in part, rev'd in part and remanded sub nom. *Scentsy, Inc. v. Harmony Brands, LLC*, 585 F. App'x 621 (9th Cir. 2014). Nevertheless, because there are substantial disagreements between the parties as to whether the trade dress is a product or package in the first place, the Court will briefly address the remaining two factors.[18]

---

[18] The fact that the Court's discussion on functionality took roughly sixteen pages to analyze is not indicative of material disputes that must go to a jury for resolution or uncertainty on the Court's part as to

2. *Distinctiveness or Secondary Meaning*

The second factor the Court must consider under *Clicks Billiards* is whether the product is inherently distinctive or has acquired secondary meaning. As noted, Kids' Town argues that because this is a product packaging case, it can meet this element by showing that its trade dress is inherently distinctive, without regard for whether its trade dress has acquired any secondary meaning. However, due to the Court's finding that this is a product design case, the Court actually only need look for any acquired distinction through secondary meaning. *Wal-Mart*, 529 U.S. at 216. That said, because Kids' Town is the nonmoving party, the Court will also look at whether its trade dress is inherently distinctive (as if this were a product packaging case).

Secondary meaning is defined as the public's association of a particular trademark or trade dress with a single source. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:8 (4th ed. 2002). Thus, secondary meaning exists, when, "in the minds of the public, the primary significance of a [design] is to identify the source of the product rather than the product itself." *Wal-Mart*, 529 U.S. at 211.

In this case, Kids' Town cannot establish its alleged trade dress has achieved secondary meaning because children's discovery centers are prevalent throughout the country, and Kids' Town's design is ubiquitous. As the City's expert has testified, the types of designs at issue here are not unique to Kids' Town; rather, they are commonplace. Dkt.

---

its conclusion. A lengthy discussion was necessary because the subject matter is technical, the caselaw is extensive, the parties approached the issue from different directions, and the Court utilized a multi-prong test. It took so long to explain *why* no reasonable juror could reach the conclusion Kids' Town suggests and *why* the Court is granting summary judgment today.

24-3, at 2–3, 7–8, 10. Said differently, the general appearance of Kids' Town discovery center is too ordinary to have acquired any secondary meaning.

Interestingly, Tatton testified that she visited numerous discovery centers throughout the United States before deciding to open a discovery center of her own, and affirmed that Kids' Town was based, in part, on some of the centers she visited. Dkt. 24-4, at 11. Not only does this call into question the legitimacy of this lawsuit—because, after all, the City did the same thing Tatton herself did in finding inspiration for its design from other similar centers—but it also shows these types of centers are not unique and most never acquire any secondary meaning.

In response to the City's arguments, Kids' Town asserts that proof of intentional copying supports an inference of secondary meaning. The Court disagrees. Kids' Town has admitted that it does not seek to protect any individual design choices of its discovery center, but rather, the overall look and feel. At the same time, however, Kids' Town has admitted that the City did not copy ALL of its look and feel, but took liberally from its design choices when creating Kidsburg. And, as both sides appear to agree, the design choices of these types of discovery centers are only limited to the designers' imagination. Thus, by its nature, it seems that *some* of Kidsburg's features would resemble *some* of Kids' Town's features regardless of the ultimate design. Nevertheless, it can hardly be said that such is strong evidence of intentional copying—especially when Tatton did the same thing herself.

Finally, timing is an issue here. Kids' Town had been in operation just 16 months when the City opened Kidsburg. Numerous courts have found that such a short period of

time is insufficient to establish secondary meaning. *Braun Inc. v. Dynamics Corp. of Am*., 975 F.2d 815, 826 (Fed. Cir. 1992) ("[W]hile not impossible, it is difficult for a product to acquire secondary meaning during an 18–month period."); *Cicena, Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1552 (Fed. Cir. 1990) (use of only 18 months is "evidence point[ing] strongly away from a finding of secondary meaning"); *Sunbeam Corp. v. Equity Industries*, 635 F. Supp. 625, 630 (E.D.Va.1987) (same).

What's more, even if the Court were to agree that Kids' Town's design is product packaging as opposed to product design—which it does not—Kids' Town would fare no better under the inherent distinctiveness portion of this element.

Trademarks are often classified in categories of generally increasing distinctiveness; they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *See Abercrombie & Fitch Co. v. Hunting World, Inc*., 537 F.2d 4, 9 (2nd Cir. 1976).[19] The latter three categories of marks are deemed inherently distinctive and are entitled to protection because their intrinsic nature serves to identify a particular source of a product. In contrast, generic marks are not registrable as trademarks. *Id.*

Kids' Town does not specifically argue that its overall look and feel falls under a particular element of the *Abercrombie* test, but seems to imply it is either suggestive, arbitrary, or fanciful. To do this, it highlights the fact that its children's discovery center is different from all other children's discovery centers. However, this is fairly obvious and a

---

[19] Although originally espoused by the 2nd Circuit, these categories have been adopted in the Ninth Circuit, *see Elliott v. Google, Inc.*, 860 F.3d 1151, 1155 (9th Cir. 2017), and by the Supreme Court. *See Two Pesos*, 505 U.S. at 768.

bit of a misnomer. Kids' Town's argument that it is so different from all other children's centers (and thus "distinctive") undercuts its contention that the City copied its design. Kids' Town goes to great lengths to explain how and why its center is distinctive from all others, but that does not make it "distinctive" for purposes of the Court's inquire here.

Kids' Town even goes so far as to quote the City's expert and the City's 30(b)(6) deponent for the assertion that "the design choices and combination of elements that Kids' Town's adopted in creating the Kids' Town discovery center are completely arbitrary." Dkt. 27, at 8. Again, not only does this lend itself to the conclusion that the City simply did the same thing as Tatton did when she designed Kids' Town, but it also leads to the conclusion that all children's discovery centers are so unique that none could ever protect its overall design or any individual elements. The Court is not willing to accept either wide-ranging proposition.

In reality, under Kids' Town's interpretation of distinctiveness, it may very well have acquired some form of inherent distinctiveness. That said, under that definition, so too has the City in designing Kidsburg. Thus, when all is said and done, the Court finds Kids' Town's inherent distinctiveness argument unnecessary (because the Court has concluded this is a product design case) and unpersuasive (because it leads to an unworkable and unrealistic outcome).

In conclusion, the Court finds that Kids' Town's overall look and feel is not inherently distinctive, nor has it acquired secondary meaning. Kids' Town has not met the second element of *Clicks Billiards*.

### 3. Customer Confusion

Even if the Court were to find that Kids' Town's alleged trade dress was nonfunctional *and* had acquired secondary meaning, Kids' Town also bears the burden of proving that there exists a likelihood of confusion between Kids' Town's trade dress and the City's alleged infringing use. *Clicks Billiards*, 251 F.3d at 1257–58; *see also Wal-Mart*, 529 U.S. at 209. Kids' Town has not met that burden here.

In the Ninth Circuit, Courts utilized the following factors in determining whether a likelihood of confusion exists: (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).

Kids' Town argues four factors weigh in its favor—strength of the mark, similarity of the goods and marketing channels, defendant's intent in adopting the mark, and evidence of actual confusion. The City argues every factor except (8)—the likelihood of expansion of the product lines—weigh in its favor. The Court's main concern in this case is that of actual confusion.[20]

Evidence of actual confusion is a strong indication that there is a likelihood of confusion, although the absence of specific examples is not dispositive. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993). Furthermore, it is insufficient that

---

[20] Because of the unique nature of this asserted trade dress (the overall "look and feel" of a product design that is functional), many of the factors from *Sleekcraft* simply don't apply.

confusion is merely possible under the circumstances; a plaintiff must show that it is probable that the use of the mark is likely to lead to confusion. *HMH Pub. Co. v. Brincat*, 504 F.2d 713, 717 (9th Cir. 1974).

In this case, Kids' Town has not presented any evidence to support a finding of actual confusion, nor even the possibility of such. In fact, the evidence Kids' Town has presented points to the opposite conclusion: that people *do not* confuse Kidsburg and Kids' Town. Thus, there is little to no chance that there exists a likelihood of confusion between the two discovery centers.

Kids' Town asserts that customers have: (1) commented that Kidsburg looks like Kids' Town; (2) asked whether there is a joint pass between Kids' Town and Kidsburg; (3) stated in a Yelp review that Kidsburg looks like a "poor man's Kids' town." Dkt. 27, at 14–15.

To begin, none of these statements are overly indicative of confusion. *See Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.,* 22 F.3d 1527, 1535 (10th Cir. 1994) (finding that de minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion). Second, if anything, these statements prove customers understood the discovery centers are different. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) ("Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself.").

Most importantly, however, Kids' Town cannot trace any tangible conduct to any

of these statements, i.e. it cannot show these statements resulted in any damages, lost sales, lost profits, etc.

The limited comments Kids' Town refers to do not rise to the level of actual confusion. Nor do they support even a finding of probable confusion. Accordingly, Kids' Town has not met its burden regarding the likelihood of customer confusion.

## V. CONCLUSION

Taking into account the parties briefs, supplemental briefs, and oral arguments, the Court finds, upon review, that the City has meet its burden. There are no material facts in dispute and summary judgment is, therefore, appropriate.

As a preliminary matter, the Court finds that this is a product design case as opposed to a product packaging case. While the décor that makes up Kids' Town's discovery center could be compared to the interior décor of a restaurant, the imagery and design of its overall look and feel is much more than simply décor. It is part of the experience itself and the reason people come to the discovery center—by Kids' Town's own admission. For these reasons, the Court finds Kids' Town's alleged trade dress falls under the product design category.

Next, under *Clicks Billiards*, the Court finds Kids' Town cannot sustain a claim for trade dress infringement. First, those features which make up Kids' Town's "look and feel"—e.g. the utilitarian features that provide the actual benefit of the trade dress—render it functional and thus not protectable. Second, even assuming arguendo that the Court found Kids' Town's look and feel nonfunctional, it has, nevertheless, not shown that its look and feel is inherently distinctive or has acquired secondary meaning. Third and finally,

MEMORANDUM DECISION AND ORDER - 37

even were the Court to find the look and feel of Kids' Town's discovery center was nonfunctional and/or had acquired secondary meaning, Kids' Town has presented no evidence to support a finding that the City's product created any customer confusion. In short, Kids' Town cannot meet its burden under *Clicks Billiards*—individually or collectively—to show trade dress infringement.

The fact that Kidsburg includes certain features that resemble features at Kids' Town's discovery center (and other centers throughout the nation) does not indicate trademark infringement, but rather the ubiquitous nature of these types of attractions. The Court is not implying that a discovery center for kids *cannot ever* have protection via patent or trademark law, but that such is not available under the circumstance of this case.

Finally, as the Court noted, because "the analysis for a claim of trademark infringement and for unfair competition are identical" *Nelson-Ricks Cheese Co.,* 331 F. Supp. 3d at 1144 (cleaned up)—and because it finds there are no disputed facts as to Kids' Town's trade dress claim—it also finds there are no disputed facts as to its unfair competition claim. In like manner, having dismissed the argument that Kids' Town's fourth cause of action was for infringement of its logo (as opposed to a continuation of its federal trade dress claim)—and again, finding no disputed facts on the federal claim—it finds there are no disputed facts as to Kids' Town's common law trademark claim. Summary judgment is, therefore, appropriate in the City's favor on all remaining claims (Counts II, III, and IV).

## VI. ORDER

1.  Kids' Town's Objection (Dkt. 27-1) is OVERRULED.

2. The City's Motion for Summary Judgment (Dkt. 24) is GRANTED.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil

   Procedure 58.

DATED: November 8, 2021

David C. Nye
Chief U.S. District Court Judge